1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

DEBRA SEXTON,                              )      No. CV 05-03915 (SH)
                                           )
                    Plaintiff,             )      MEMORANDUM OPINION
                                           )      AND ORDER
        v.                                 )
                                           )
JO ANNE B. BARNHART,                       )
Commissioner of Social Security,           )
                                           )
                    Defendant.             )
_____    )

        This matter is before the Court for review of the decision by the Commissioner of

Social Security denying plaintiff's application for Supplemental Security Income under

Title XVI of the Social Security Act.  Pursuant to 28 U.S.C. § 636(c), the parties have

consented that the case may be handled by the undersigned.  The action arises under 42

U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and

transcript of the record before the Commissioner.  The plaintiff and the defendant have

filed their pleadings, the defendant has filed the certified transcript of record, and the

parties have filed a joint stipulation.  After reviewing the matter, the Court concludes that

the decision of the Commissioner should be reversed and remanded.

        On January 31, 2002, plaintiff Debra Sexton filed an application for Supplemental

Security Income  alleging an inability to work since January 8, 2002, due to foot pain.

(Administrative Record ["AR"] 42-44, 48-54, 64).  On April 25, 2003, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act.  (AR 20-25).

Plaintiff makes five challenges to the ALJ's determination.  Plaintiff alleges that the ALJ erred (1) in failing to properly evaluate the side effect of medications on plaintiff's ability to work; (2) in failing to properly evaluate plaintiff's mental functioning under the Listing of Impairments 12.05; (3) in failing to evaluate the combined effects of all of plaintiff's physical and mental problems and their impact on plaintiff's ability to work; (4) in improperly using the Grids when plaintiff had significant non-exertional impairments; and (5) in failing to call a vocational expert to testify although plaintiff had severe non-exertional impairments.

For the reasons discussed below, the Court finds that plaintiff's first claim of error does not have merit, and that plaintiff's second claim of error does have merit. Since the matter is remanded based on plaintiff's second claim of error, the Court will not address plaintiff's third, fourth and fifth claims of error.

### **ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to properly evaluate the side effects of medications on plaintiff's ability to work.  Defendant argues that the ALJ properly evaluated the evidence pertaining to plaintiff's pain.

At the administrative hearing on August 14, 2002, plaintiff testified that she had pain in her feet "all of the time."  (AR 208).  Plaintiff further testified that she had been taking medication for an ulcer problem since 1995, and that she was still taking medication for it.  (AR 210).  Shortly prior to the hearing, plaintiff had stated that she was taking medications for a peptic ulcer and for allergies, and that she was taking Tylenol for pain (plaintiff indicated she had taken but had had reactions to Vicodin and Vioxx).  (AR 82).

The ALJ initially found that plaintiff's foot problems limited plaintiff's work to a light exertional level.  (AR 23).  The ALJ then found that plaintiff's "complaints of totally disabling limitations due to pain throughout her entire body find little support in the medical evidence of record."  (Id.).  The ALJ noted: "Her treatment history essentially consists of episodic visits to emergency rooms, with no follow-up as to the referrals that were made for her foot problems, including physical therapy.  The objective findings were minimal and other than the prescription of creams, foot exercises, heel pads, good support shoes and anti-inflammatory medication, no extensive treatment was recommended."  (Id.).  The ALJ further noted: "Her gait was steady and no assistive devices were required, although it was noted the claimant had brought crutches to the consultative psychological examination and asked if she could remove her shoes due to pain in her feet.  However, the psychologist reported he did not observe any obvious deficiencies in her gait and posture."  (AR 23-24).  The ALJ added, "There is no indication in the record that the claimant requires crutches to ambulate."  (AR 24).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain.  Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so.  Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  The factors relevant to an ALJ's evaluation of a claimant's pain include: daily activities; location, duration, frequency and intensity of pain; type, dosage, effectiveness and side effects of medications; treatment other than medication; measures used to relieve pain; and other factors.  20 C.F.R. § 416.929(c)(3); Erickson v. Shalala, 9 F.3d 913, 917-18 (9th Cir.

1993)(An ALJ must consider all factors that might have a "significant impact on an individual's ability to work," including side effects of medications and subjective evidence of pain); see also Social Security Regulation 96-7p, 1996 WL 374186.

Here, the ALJ was not required to evaluate the side effects of medications on plaintiff's ability to work. The ulcer and allergy medications did not relate to plaintiff's foot problem, and there was no evidence of side effects severe enough to interfere with plaintiff's ability to work. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001). Moreover, the ALJ was not required to evaluate the side effects of Vioxx and Vicodin (the latter had been prescribed in August 2001, AR 149), because plaintiff had stated she had stopped taking them (AR 82), because plaintiff had told medical personnel in February 2001 that Vioxx did not provide her relief (AR 192), and because there was no indication in any medical records that plaintiff had a reaction to Vioxx or Vicodin.

In any event, in the decision the ALJ noted: (1) an August 2, 2001 emergency room record indicating that plaintiff's left foot had a full range of motion, with an intact nerve and pulse, and with no pain to palpation, and noting that plaintiff had failed to follow up from an earlier visit and would receive no more pain medication until she saw an orthopedist (AR 22, 149, 152); (2) an August 24, 2001 medical record indicating that plaintiff should seek the treatment of a podiatrist or orthopedist and should elevate her feet (AR 22, 93) (3) a September 4, 2001 medical record indicating that x-rays on plaintiff's left foot were negative, and that plaintiff also was complaining of right foot pain (AR 22, 179-80); (4) an October 23, 2001 medical record indicating that plaintiff was diagnosed with plantar fasciitis in both feet, was given cream anti-inflammatory medication, and was directed to do foot exercises and obtain heel pads and good support shoes. (AR 22, 123); (5) a January 8, 2002 medical report indicating that plaintiff reported that she had obtained good support shoes and that her pain had gotten better but had returned, and that plaintiff's anti-inflammatory medication prescription was increased (AR 22, 121); (6) a March 12, 2002 medical record indicating that the plaintiff's foot

strength and reflexes were normal, that plaintiff walked with a limp, and that plaintiff was not interested in using medication for her foot pain (AR 22, 162); (7) a September 23, 2002 psychological evaluation report (completed subsequent to the administrative hearing), wherein the psychologist noted that plaintiff "ambulated with crutches and asked if she could remove her shoes because of pain in her feet" and that "[t]here were no other obvious deficiencies in her gait and posture" (AR 22, 194); and (8) the absence of evidence in the record that plaintiff required crutches to ambulate (AR 24). Thus, substantial evidence supported the ALJ's finding that plaintiff's pain did not cause her to be totally disabled. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.").

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ failed to properly evaluate plaintiff's mental functioning under the Listing of Impairments 12.05 (Mental Retardation) and that the ALJ had a duty to further develop the record. In response, defendant argues that the evidence did not support a finding by the ALJ that plaintiff's mental impairment met or equaled Listing 12.05.

A mental impairment may constitute a disability within the meaning of the Act. See Briggs v. Sullivan, 954 F.2d 534, 535 (9th Cir. 1992). If a person has a severe impairment or combination of impairments that meets or equals one of a number of "listed impairments," the person is conclusively presumed to be disabled. 20 C.F.R. §§ 416.920, 416.920(a); Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987)("When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.").

Listing 12.05 states that "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05 further states that: "The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. [¶] A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR [¶] B. A valid verbal, performance or full scale IQ of 59 or less; OR [¶] C. A valid verbal, performance, or full scale IQ of 50 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR [¶] D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: [¶] 1. Marked restriction of activities of daily living; or [¶] 2. Marked difficulties in maintaining social functioning; or [¶] 3. Marked difficulties in maintaining concentration, persistence, or pace; or [¶] 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 12.05.

In the present case, at the administrative hearing, plaintiff, who was 37 years-old at the time of the hearing, testified that her education stopped in the tenth grade, that she presently stayed in motels but sometimes spent a night at friends' houses, that she last worked in 2000 for three months at Blockbuster Video, that prior to that she had worked for a month delivering packages for a messenger company, that prior to that she had worked for a couple of months doing counter sales and baking at a pretzel place, and that at some point during the last five years she had worked for one year at Messenger Express. (AR 205-08).

Plaintiff was evaluated by Scott Kopoian, Ph.D. (psychologist) on September 23, 2002. Dr. Kopoian stated that plaintiff was able to perform the assessment in a competent and organized manner and that plaintiff understood what was expected of her.

Dr. Kopoian stated that plaintiff had completed 12 years of formal education and was placed in regular education classes.  Dr. Kopoian found that plaintiff's IQ (based on three separate tests) ranged from 67 to 72.  Dr. Kopoian diagnosed petitioner as "Borderline Intellectual Functioning, Pain Disorder Associated with both Psychological Factors and a General Medical Condition and Dysthymic Disorder."  Dr. Kopoian prognosed that plaintiff has the cognitive capacity to manage funds on her own behalf, can perform simple and repetitive tasks on her own, can interact appropriately with authority, can interact with peers without exhibiting behavioral extremes, and can access public transportation without assistance.  (AR 193-98).

In his September 26, 2002 assessment, Dr. Kopoian found that plaintiff did not have any impairments in understanding and remembering short, simple instructions or in carrying out short, simple instructions; that plaintiff had a slight impairment in the ability to make judgments on simple work-related decisions; that plaintiff had marked impairments in understanding and remembering detailed instructions and in carrying out detailed instructions; that plaintiff had moderate impairments in interacting appropriately with supervisors and in responding appropriately to changes in a routine work setting; and that plaintiff had marked impairments in interacting appropriately with the public and with co-workers and in responding appropriately to work pressures in a usual work setting.  (AR 200-01).

In his evaluation of whether plaintiff had a mental impairment which met or equaled Listing 12.05, the ALJ wrote as follows:

"No practitioner who has examined the claimant, or reviewed her records, has opined that her impairments meet or equal a listing.  The claimant attained verbal, performance, and full scale I.Q. scores of 72, 68, and 67, respectively.  The claimant's performance and full scale I.Q. scores would satisfy the first part of Sections 12.05C or D of the listings, which require a valid verbal, performance, or full scale I.Q. score of 60 through 70.  Theses scores reflect an individual with mild

7

mental retardation.  However, the claimant's vocational history, her education and overall level of functioning are not commensurate with that of an individual performing at the mild mental retardation range of intellectual functioning.  The claimant reported she completed 12 years of formal education, having been placed in regular education classes.  She has had a variety of jobs consisting of video sales person, messenger, package delivery person and baker/cashier.  Exhibit 3E.  Some of these jobs required operating a motor vehicle and making various stops and handling money.  She testified that the longest she held any of these jobs was one year, however, this is a long enough period of time to show she was able to perform the level of skills required.  She also testified that she does not have a permanent residence but stays in hotels and the homes of various friends, which requires a certain level of functionality to do so on a regular basis.  The claimant was able to successfully apply for welfare and fully perform all aspects of the comprehensive psychological testing administered.  The consultative examining psychologist reported that the claimant was able to perform testing in a competent and organized manner and that she understood all that was expected of her.  Based on these findings, he found the claimant's actual functioning to be at the borderline intellectual level.  Exhibit 7F.  The Administrative Law Judge accepts and adopts said findings."  (AR 21).

Here, the Court concurs with plaintiff that the ALJ did not properly evaluate plaintiff's mental impairment, at least under Listing 12.05C.  See Luckey v. U.S. Department of Health and Human Services, 800 F.2d 666, 669 (4th Cir. 1989)("[T]he Secretary may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met.").  Although the ALJ found that plaintiff met the first requirement in 12.05C (i.e., "A valid verbal, performance, or full scale IQ of 60 through 70) (AR 21), the ALJ failed to address the second requirement in Listing 12.05C (i.e., "a

physical or other mental impairment imposing an additional and significant work-related limitation of function").  The question remains as to whether the fact that plaintiff was able to walk and/or stand for only four hours out of an eight-hour workday, a limitation found by the ALJ (AR 23, 25),  satisfies the second requirement in Listing 12.05C.

As noted above, Listing 12.05 requires that "the evidence demonstrates or supports onset of the [mental retardation] impairment before age 22."  However, there is nothing in the record establishing the onset of plaintiff's mental impairment, and the evidence in the record about how much education and what kind of education plaintiff received was ambiguous (see AR 70, 194, 205).  Thus, the case is remanded in order for the ALJ to make a determination about the onset date of plaintiff's mental impairment, and if an onset date prior to age 22 is shown, then for consideration of the second requirement in Listing 12.05C.  See Brown v. Secretary of Health and Human Services, 948 F.2d 268, 271 (6th Cir. 1991)(where ALJ improperly rejected IQ score of 68, remanding for determination as to whether the claimant's "mental retardation manifested itself during his developmental period," and if so, for determination as to whether the claimant's physical impairments "impos[e] additional and significant work-related limitation of function"); see also Nilby v. Schweiker , 762 F.2d 716, 719 (9th Cir. 1985)("A remand is appropriate where additional administrative proceedings could remedy defects"); see also Smolen v. Chater, supra, 80 F.3d at 1288 (The ALJ has an independent "'duty to fully and fairly develop the record to assure that the claimant's interests are considered.'").

## ORDER

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED:March 27, 2006

1

2                                          _____/s/_____

3                                          STEPHEN J. HILLMAN

4                                          UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28